# State Reporter's Case.

*State reporter—Functus officio—Unreported cases—Act of* 1878.

The decisions of the Supreme Court left unreported at the end of the term of an outgoing reporter must be reported by his successor, as the outgoing reporter is *functus officio*.

Section 6 of the Act of June 12, 1878, P. L. 201, which provides that the salary of the reporter for the last quarter shall not be paid until the decisions of that year shall have been reported, does not apply to a reporter whose term of office has expired. Its effect is to prod the incumbent and keep him up to his work.

*Removal for delay in reporting—Implied repeal—Acts,* 1887, 1889.

Section 2 of the Act of May 19, 1887, P. L. 127, requiring all reports to be placed in the hands of the publishers within twenty days after the decisions have been handed down, under penalty of removal from office, is repealed by implication by the Act of March 28, 1889, P. L. 22, requiring all cases to be reported, the former act being inconsistent with the latter, as it cannot be assumed that the legislature intended to impose duties upon the reporter impossible to be performed.

*Salary for last quarter of term.*

A reporter who has faithfully performed his duty and kept up with the business of the court as far as practicable is entitled to his last quarter's salary, notwithstanding there are a large number of arrears of unreported cases.

Submitted on paper books July 13, 1892. Agreement for

submission.    Before PAXSON, C. J., STERRETT, GREEN, WIL-
LIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

The agreement for submission was as follows :

" The subscribers agree that at the meeting of the Justices
of the Supreme Court in the consultation room at Philadelphia,
on July 13, 1892, they will submit to the judgment of a major-
ity of such of the Justices as may hear them the following
questions :

" 1.  Under the acts of assembly relating to the office of
state reporter, as at present existing, is it the legal obligation or
duty of Boyd Crumrine to prepare the reports of all the unre-
ported cases decided on and prior to May 23, 1892, or does
such duty rest upon James Monaghan, his successor?

" 2.  If the said Justices shall decide that it is not the legal
obligation or duty of said Crumrine to prepare the reports of
all said unreported cases, then, in view of the manner in which
he has discharged his duties during his term, they shall decide
what part or portion thereof, if any, should be reported by said
Boyd Crumrine.

" 3.  If said Justices shall decide that said Crumrine should
report all said unreported cases or any portion thereof, then
they shall also decide what proportion, if any, of the sum of
$6,000, appropriated under the provisions of the Act of March
28, 1889, P. L. 22, for the last of the two years commencing
June 1, 1891, and ending June 1, 1893 (see Act of June 9,
1891, P. L. 265), shall be paid to and received by said Crum-
rine for the reporting directed to be done by him under this
decision.   In this connection it is agreed that in settlements
made by said Crumrine with the auditor-general up to Feb.
28, 1892, he had received $2,074.17 of said sum, and that on
June 1, 1892, there remained about $925.83 which he claims
he is entitled to draw from the state treasury on account of
the allowance under said act for work done prior to June 1,
1892.

" 4.  The following facts are agreed upon, to be considered
by the said Justices :—

" (a)  The cases decided on and after Jan. 4, 1892. (observ-
ing that frequently several of them were argued together and
will be reported together as one report), were in number, as
follows :—

| | |
|---|---|
| January 4, 1892, . . . . | 149 cases. |
| January 5-31, 1892, . . . . | 61 cases. |
| February, 1892, . . . . . | 35 cases. |
| March, 1892, . . . . . . | 122 cases. |
| April, 1892, . . . . . | 78 cases. |
| May, 1892, . . . . . . | 92 cases. |

"(b) Of the foregoing cases, all those decided on Jan. 4, 1892, except four, have been reported by said Crumrine, and in addition thereto four cases, at least, decided since that date. And it is estimated that it will require three volumes, and perhaps a part of a fourth, to report said unreported cases.

" (c) The work of said Crumrine for the year ending May 23, 1892, may be presented as follows :

VOLUMES AS PUBLISHED.

| 138 Pa. came direct from publisher | | May 25, 1891. |
|---|---|---|
| 139 Pa. | " . " | July 2, 1891. |
| 140 Pa. | " " | Sept. 28, 1891. |
| 141 Pa. | " " | Oct. 26, 1891. |
| 142 Pa. | " " | Dec. 21, 1891. |
| 143 Pa. | " " | Feb. 26, 1892. |
| 144 Pa. | " " | April 23, 1892. |
| 145 Pa. | " " | June 14, 1892. |

REPORTS PREPARED WHOLLY AFTER MAY 23, 1891.

140 Pa. except fifty-three pages.

141 Pa. to 146 Pa. complete.

147 Pa., of this, estimated, one hundred and fifty pages.

" (d) The said Crumrine was duly qualified as state reporter on May 21, 1887. James Monaghan, his successor, having been appointed state reporter, was duly qualified as such on ·May 24, 1892.

" 5. The decision of the said questions by the said Justices shall be filed with an original copy of this submission in the office of the prothonotary of the Supreme Court at Philadelphia, and the parties hereto will submit finally to said decision."

*Boyd Crumrine*, late state reporter, p. p.—The office of state reporter is a public office : Shelby v. Alcorn, 36 Miss. 273, 72 Am. Dec. 169, note : Mechem, Pub. Off. §§ 1, 16, 18, 20, 21 ; under the supervision of the court : Washington v. Sanders, 2 Dev. L. 343, 21 Am. Dec. 336. The powers, duties, rights and

objects enter into the subject of a statute creating a public office: Mechem, Pub. Off. § 502, note. He cannot delegate his duties: Mechem, Pub. Off. § 567; except ministerial duties: Ibid., § 568, et seq. See, also, State v. Harrison, 113 Ind. 663, 3 Am. St. 667. There is no contract relation: Mechem, Pub. Off. §§ 3, 463, 465, 855; U. S. v. Hartwell, 6 Wall. 385, 393; Conner v. N. Y., 2 Sandf. 355; Com. v. Bacon, 6 S. & R. 322; Com. v. Mann, 5 W. & S. 418; Butler v. Pa., 10 How. 402; Koontz v. Franklin Co., 76 Pa. 154; Barker v. Pittsburgh, 4 Pa. 51; Cooley, Const. Lim. 334; 1 Kent, Com. 419, note 1; Davis v. State, 61 Am. Dec. 331; Fitzsimmons v. Brooklyn, 102 N. Y. 536, 55 Am. Dec. 835; Steubenville v. Culp, 38 Ohio St. 18, 43 Am. Dec. 317; Hoboken v. Gear, 27 N. J. L. 265; Locke v. Central City, 4 Col. 65, 34 Am. R. 66. His rights and duties cease at the end of his term: Mechem, Pub. Off. § 396, citing Badger v. U. S., 93 U. S. 599; People v. Tieman, 8 Abb. Pr. 359, 30 Barb. 193; or when his successor is qualified, unless extended by statute: Mechem, Pub. Off. § 397; and his authority ends: Mechem, Pub. Off. § 509; except where an executive officer, as a sheriff, has begun a duty and incurred a responsibility, he may complete the duty: Mechem, Pub. Off. § 510, note. An incumbent is estopped by his own interpretation: Mechem, Pub. Off. § 394, citing Hench v. State, 72 Ind. 297.

If it were the official duty of the late reporter to report the arrears, then it could be enforced by mandamus. But mandamus will not lie against one whose term of office has expired: Mechem, Pub. Off. §§ 939, 940; High, Ex. Rem. §§ 1, 37, 38, 73-78; Short, Mandamus, *228; Lamar v. Wilkins, 28 Ark. 34; Mason v. School Dist., 20 Vt. 487; State v. Lynch, 8 Ohio St. 347; State v. Beloit, 21 Wis. 280, 91 Am. Dec. 474; Rex v. Archbishop of Canterbury, 8 East, 220. As to who is an officer see Hamlin v. Kassafer, 15 Ore. 456, 3 Am. St. 178.

The act of June 12, 1878, §§ 3, 6, P. L. 201, amended by Act of May 19, 1887, P. L. 127, prescribes the duty of the incumbent. The retiring reporter should no more continue to report than a retiring Justice to prepare opinions argued during his term. The provision holding back the last quarter's salary until the decisions for that year have been reported, applies only to cases marked to be reported under the Act of

1878. It was intended as a spur on the incumbent during the whole of any year. The decisions of "that year" would include all arrears; for it would be an evasion of the law for a reporter to allow himself to fall behind in one year, take three quarters of the salary and skip to the decisions of the next year and by a strong effort to do the whole of them seek to secure the salary for the whole year.

The allowance provided by the Act of 1889 was to enable the reporter to discharge the increased duties devolved upon him by that Act. It would therefore seem that if he is to do the arrears after his term expires, he is entitled to receive a part of the allowance after the expiration of his term, as a direct appropriation for the work he is to do. Anything else would be unjust.

*John G. Johnson, J. Frank E. Hause* and *R. Jones Monaghan* for James Monaghan, present state reporter.—The common law rule of *functus officio* has no application in the face of the statutory provisions. The reporter is required by statute to report the decisions. What decisions? If not limited to the cases decided during his term, where shall the line be drawn, how shall it be drawn and who shall draw it? His bond is given to cover such case. As mandamus would probably not lie the only remedy is on the bond. The provision of § 6 of the Act of 1878, requiring his last quarter's salary to be withheld until all the cases for the year have been reported shows that those cases must be reported by the then incumbent. If this is merely a spur and the reporter declines to be spurred, the provision has no effect, except under our construction. By the Act of May 19, 1887, P. L. 127, if he is back twenty days with one volume he is required to be dismissed. The law cannot be that his successor, without extra pay, without default and with his own duties to perform, shall be loaded down with the work which the law requires another to do and so hindered as to make compliance with the law impossible on his part. If such is the rule, it offers a premium to a retiring official to be as far in default as possible. At best the amount of work left at the end of the term would be as varied as the incumbents of the office, or the quality of their help. If a reporter were removed for failure to report promptly, could he draw his salary

and refuse to complete the work without liability on his bond? The same rule should apply where from any cause he has become in arrears. Our construction has been adopted by prior reporters and is the only construction that will harmonize the statutes and establish a certain and uniform rule.

The salary and allowance should be distributed to the work of the year. The allowance for clerk hire and assistance was for that particular work: Acts of March 28, 1889, § 2, P. L. 22; June 9, 1891, P. L. 265; otherwise one must do the work and another get the pay.

OPINION BY MR. CHIEF JUSTICE PAXSON, July 16, 1892.

On May 24, 1892, James Monaghan, Esq., was duly qualified as reporter of the decisions of the Supreme Court, *vice* Boyd Crumrine, Esq., whose term of office had expired on May 21st of the same month. At the time Mr. Monaghan was qualified there were over three hundred cases which had been decided during his predecessor's term of office, and not yet reported. A dispute having arisen between Mr. Crumrine and Mr. Monaghan as to who should report these cases, they have mutually agreed to submit the matter to the judgment of the justices of this court, or a majority of them. In view of the fact that a delay in the publication of the State Reports would be of serious inconvenience to the profession, we have considered the question as presented in the " agreement of submission."

So far as we are aware, this is the first time any difficulty has arisen. Under the system as it existed prior to the Act of June 12, 1878, the reporter was not a salaried officer. His compensation was the profit arising upon the sales of his reports, for which he was given the copyright, as well as a fee of fifty cents to be taxed as a part of the costs in each case. Under this system it was the practice of each reporter to report all of the cases which had been decided and marked " to be reported " during his term. He claimed the right to report all such cases, inasmuch as his compensation depended upon the sales of the reports. As no question ever arose as to the correctness of this practice, we are not called upon to express an opinion in regard to it. We refer to it only as a matter of history.

The system of reporting as it had existed under the Act of

April 11, 1845, P. L. 374, and its supplements, was changed by the Act of June 12, 1878, P. L. 201, and its supplements of May 19, 1887, P. L. 127, and of March 28, 1889, P. L. 22.

The Act of 1878 makes the reporter a salaried officer, defines his duties, and fixes his compensation. He is appointed by the governor for a term of five years, and may be removed by him at any time for " incompetency, or a failure to discharge his official duties," on the address of the judges of this court. ·The sixth section of the said act is as follows : " The reporter shall receive for his services under this act a salary of three thousand dollars for each year, payable out of the state treasury, in quarterly instalments, the last quarter not to be paid, however, until the decisions for that year shall have been reported and prepared for publication." Under this act the reporter had no pecuniary interest in the reports; was prohibited from obtaining any copyright thereof, and from receiving any other compensation whatever. The second section of said act, as amended by the Act of May 19, 1887, provides, *inter alia*, that the "failure of the said reporter to report, prepare for publication and place in the hands of the publishers, the decisions of said court, marked or designated to be reported, for a period of twenty days after a sufficient number of such decisions have been delivered to him to make a printed volume such as required by this act, shall be deemed a failure to discharge his official duties within the meaning of this act; and it·shall be the duty of the governor, upon the complaint of any one showing such delay in the performance of his duties, to remove said reporter, and fill the vacancy by appointment as hereinbefore provided; and the certificate of the several prothonotaries of said court, stating the number of unreported cases in the hands of said reporter, shall be deemed sufficient evidence of the unreported cases in the hands of said reporter to require the governor to act on such removal; and the said prothonotaries, and each of them, are hereby required to furnish a list stating the number of cases placed in his hands, and the number of pages of manuscript covered by said cases, upon the application of any attorney of said court, upon paying the legal fees therefor."

Up to this time only such cases were reported as were marked " to be reported " by the justices of the court. The Act of

March 28, 1889, made a radical change in this respect. It required all of the cases to be reported, making a distinction, however, in the manner of the report between cases marked "to be reported" and those which were not so marked. For this additional labor the reporter was allowed an additional compensation of $3,000 per year for "stationery, clerk hire and assistance." The third section repeals "all acts and parts of acts inconsistent herewith." It is almost needless to say that this change increased the labors of the reporter. Instead of one or two volumes of reports per year, we now have seven or eight. It moreover rendered it impossible to comply with some of the provisions of the previous acts. As an illustration, we may refer to the one requiring all reports to be placed in the hands of the publisher within twenty days after the decisions have been handed down, under penalty of removal from office. When but a few of our decisions were reported—only those ordered to be so by the court—the legislature may have supposed that a report of them within twenty days was possible. It was never so in fact. But when the legislature ordered all cases to be reported, the physical impossibility of doing so within the time limited by the second section of the Act of 1878, as amended, is so apparent that we must assume they intended that portion of the said section to be repealed by the Act of 1889. It sometimes happens that enough decisions are handed down in one day to make three volumes of reports. It is absurd to suppose that these can be reported in twenty days. As we cannot assume the legislature intended to impose duties upon the reporter impossible to be performed, we must hold this provision to be repealed for the reason that it is "inconsistent" with the Act of 1889.

We come now to the question, who is to report the cases left unreported when Mr. Crumrine's term of office expired and Mr. Monaghan's commenced? We might answer this question briefly by saying, the state reporter, Mr. Crumrine, is no longer reporter. His term has expired, and he is *functus officio*. He can do no official act. Mr. Monaghan fills the office, and is in the enjoyment of its fees and emoluments. He is charged with the performance of all its duties. Moreover, if it were an object for him to report the cases in question, he would have no difficulty in preventing Mr. Crumrine from interfering

with him.   That it is a burden instead of a benefit does not
alter the law of the case.   We are not aware of any law which
compels Mr. Crumrine to continue reporting after his term of
office has expired.   It is true, our attention has been called to
the sixth section of the Act of June 12, 1878, before quoted,
which provides that the salary of the reporter for the last quar-
ter shall not be paid " until the decisions of that year shall
have been reported and prepared for publication."   We regard
this section, however, as being only intended to apply to the
reporter who is in office, and not to a reporter whose term of
office has expired.   Its effect is to prod the incumbent and
keep him up to his work.   It would be straining the law to
apply it to a reporter who has gone out of office, and who is in
no default.   The fact that Mr. Crumrine has left a number of
unreported cases is not to the purpose.   This was unavoidable,
and will necessarily occur with his successor.   Without more,
it does not show neglect of duty.   Mr. Crumrine has been ·
commendably prompt during his entire term of office, and if
his successor shall prove equally so we shall be well satisfied
in this respect.

Having faithfully performed his duty, and kept up with the
business of the court as far as practicable, we think he is en-
titled to the last quarter's salary, and that the Act of 1878
does not and was not intended to interfere with it.

This view works no injustice to either party.   But for the
unusual meeting of the court on the 13th of July, Mr. Mona-
ghan would have had no duties to perform until the commence-
ment of the October term in Pittsburgh.   In the mean time,
he would draw the salary and allowance for clerk hire, while
Mr. Crumrine, if compelled to report the cases in question,
would be doing so, not only without compensation, but at his
own expense for the needed assistance.   The chances are that
Mr. Monaghan will leave his successor quite as much work as
Mr. Crumrine has left him.   In this way matters will be fairly
equalized.

It has been suggested that this view makes it an object for
the reporter to neglect his duties, and thus throw an undue
burden upon his successor.   We will take care of that.   The
act of assembly authorizes his removal by the governor for
neglect of duty upon the address of the justices of this court.

The reporter is an officer of this court, and to some extent under our control.   We are quite sure the incumbent will not need prodding.   If he does, we know how to do it.

Our conclusion is that it is the duty of Mr. Monaghan, the present reporter, to report all the cases left unreported by Mr. Crumrine.   The latter will, of course, complete any unfinished volume he may have on hand.   We are further of opinion that he is entitled to draw his salary for the last quarter.

The prothonotary is directed to file this opinion with the original copy of the submission, and furnish each of the parties with a copy thereof.